**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ALICIA M. SILVA,

    Plaintiff,

v.                                                  CASE NO. 8:04-CV-2542-T-17EAJ

JOHN E. PORTER, in his
official capacity as Postmaster General
of the UNITED STATES POSTAL SERVICE
and CARL ERIC STRANDBERG,

    Defendants.

_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

This case comes before this Court on Defendant's Motion for Summary Judgment and supporting Memorandum of Law, filed April 17, 2006 (Docket No. 83, 84) and Plaintiff's response, filed on May 11, 2006 (Docket No. 88). For the reasons enunciated below, the Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

PROCEDURAL

On November 24, 2004, Plaintiff, ALICIA M. SILVA (Silva), filed a complaint (the "Complaint") against Defendant, JOHN E. PORTER, Postmaster General of the United States Postal Service (USPS) and Defendant, CARL ERIC STRANDBERG (Strandberg), (collectively the Defendants). Silva's initial complaint (Docket No. 1) though obtuse, appeared to assert violations of the Family Medical Leave Act (FMLA); the Civil Rights Act of 1991, in 42 U.S.C. 1981; the Rehabilitation Act of 1973; the Health Insurance Portability and Accountability Act (HIPAA) of 2003; Weingarten Rights, as found in 29 U.S.C. 151; 42 U.S.C. 2000e (Title VII); the Age Discrimination in Employment Act (ADEA) of 1967; National Labor Relations Act, 29 U.S.C. 157; the Fifth Amendment of the United States Constitution, Federal Tort Claims Act (FTCA); Privacy Act; Office of Personnel Management (OPM) Regulations; Federal Labor

Standards Act (FLSA), 5 U.S.C. 2302; and breach of the Equal Employment Opportunity (EEO) Settlement Agreement.

Silva requested the following remedies: (1) liquidated, compensatory, and punitive damages and (2) declaratory, injunctive, equitable relief. USPS and Strandberg filed their Answer and Affirmative Defenses March 8, 2005 (Docket No. 18). Defense counsel for USPS and Strandberg was replaced and filed an Amended Answer and Affirmative Defenses on April 11, 2005 (Docket No. 28). Silva's counsel then amended her Complaint, filed November 24, 2005 (Docket No. 47) and re-alleged substantially the same causes as in the original Complaint. The present motion followed.[1] The following facts are accepted as true only for the purposes of resolving the instant motion.

## FACTUAL

Alicia Silva is a female, born May 12, 1958 of Hispanic descent and was over forty at all times relevant to this suit. Silva was employed by the USPS from July 19, 1997 until March 17, 2004, when she elected to pursue disability retirement. Prior to her employment in the USPS, Silva was diagnosed with multiple medical conditions, including asthma and post traumatic stress disorder (PTSD), for which she receives treatment and medication. Her attending physician stated her condition is under control, through the combination of treatment and medication. While heightened stress and environmental factors can trigger a relapse of Silva's condition, she is capable of performing normal daily activities without complications.

On October 9, 2001, Silva was transferred from the Nokomis Postal Facility to the Englewood facility following an Equal Employment Opportunity (EEO) settlement (Settlement). The Settlement provided Silva was to be transferred to Englewood the first weekend of October and all adverse documents were to be removed from Silva's employment file and expunged. Further, the Settlement reduced Silva from a part time regular clerk to a part time flexible clerk. Both parties disagree on Silva's performance from October 2001 until 2003. Silva argues she

---

[1] The court notes that Rule of the District Court of the United States for the Middle District of Florida 3.01(c) was enacted in 1984 pursuant to 28 U.S.C. § 2071, Fed. R. Civ. P. 57, 83. It specifically states, "[a]bsent prior permission of the Court, no party shall file any brief or legal memorandum in excess of twenty (20) pages in length." Rule 3.01(c). The Court strongly reminds the parties these rules are in effect and may have consequences in the future, if the parties do not abide by the rules of the Court. However, in the instant case, the Court will address the arguments of each parties' memorandum, on its merits, regardless of page length.

was a model employee who was eager to learn new jobs, whereas Standberg and the US Postal Service supervising staff describe Silva as disruptive and abusive to customers and staff. However, Silva was commended two times by customers and awarded a high review by a "mystery shopper". "Mystery shoppers" are individuals hired to visit stores and evaluate the shopping experience

In September or October of 2001, Silva complained of a co-worker's picture[2] in the worker's mail stall.  In November 2003, Silva was reprimanded multiple times by the local postmaster, Strandberg, and the post office management.  On occasion, Silva requested another employee, her husband, attend her reprimand, however Standberg would only permit the authorized shop steward to sit in the meeting.  Silva was again reprimanded in December 2003, and was recommended for a fitness for duty (FFD) exam following a workplace argument in which Silva disclaimed the only way to alter her appearance was to take a gun to her face. Strandberg testified Silva's statement concerned him and, for Silva's own safety, referred her for a psychiatric examination.   Silva was again reprimanded January 2004, and February 2004.  The parties disagree as to the characterization and severity of the reprimands, either stern and warranted or abusive and unprofessional.

On February 9, 2004 Silva was again reprimanded and subjected to a FFD exam, for her alleged abuse and insubordination.  Following the examination results, that Silva was no longer fit for duty, Strandberg mailed Silva a letter advising Silva of her options: to resign, resign and apply for disability, or obtain disability retirement.  Silva retired on disability.

## DISCUSSION

**A.      Standard of Review**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Fed. R. Civ. P. 56(c)).  This determination is not based solely on the pleadings, but can be made if the pleadings, depositions,

---

[2] The picture Plaintiff Silva complained of was a naked man, wearing a "cowboy" hat and draped with an American flag in a provocative pose.  Plaintiff argues the picture was pornographic and designed to humiliate and further Defendants' intentional sexual discrimination.

answers to interrogatories, and admissions on file, together with the affidavits, if any, support the moving parties contention that no genuine issue of material fact exists. *Id.*

Once the moving party has properly supported its motion for summary judgment, the non-moving party must go beyond the pleadings to show that a genuine issue exists for trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party must come forward with evidence sufficient to establish the existence of the essential elements of the party's case, and for which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).

When determining whether the moving party has met its burden, the Court accepts as true the non-movant's evidence, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question before the court then is not whether the judge thinks the evidence obviously favors one side or the other, rather the question is whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* At 252. Where the record, taken in its entirety, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue to be resolved at trial. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.**     **Discussion**

Defendants, USPS and Strandberg, filed their Motion for Summary Judgment with this Court claiming that the Plaintiff, Silva, cannot, as a matter of law, meet her burden of establishing violations of the Rehabilitation Act, Title VII, Federal Tort Claims Act, HIPAA, Privacy Act, FMLA, OPM Regulations, the Fair Labor Standards Act (FLSA), 5 U.S.C. 2302 , and her Weingarten rights. Further, Defendants claim the Plaintiff failed to initiate her breach of the EEO Settlement claim in a timely manner, and is, therefore, barred from litigating it.

**1.**     **Defendant's Claim Regarding Plaintiff's Inability to Meet its Burden**

**a.**     **Rehabilitation Act**

An individual must "have a physical or mental impairment which for such individuals constitutes or results in a *substantial impediment* to employment,." to qualify for protection under the Rehabilitation Act. 29 U.S.C. 794(a), 29 U.S.C. 705 (20)(A). Such an impairment must "substantially limit[] one or more of [] person's major life activities," have a record of a substantially limiting impairment, or be regarded as having a substantially limiting impairment. 29 U.S.C. 705 (20)(B). Additionally, the Plaintiff must show she was "otherwise qualified to

perform the job; and was discriminated against based on [her] disability." *Collado v.UPS,* 419 F.3d 1143, 1149 (11th Cir. 2000) (quoting the MacDonald Douglas factors).

Defendants, USPS and Strandberg, claim that Plaintiff, Silva, could walk, talk, hear, care for herself, and work throughout her employment with the USPS and was, thus, not substantially impaired under the Rehabilitation Act. Defendants argue that a disability must be substantially limiting upon one's major daily activities. *See Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000) (discussing the ADA and Rehabilitation Act's definition of disability). The availability of mitigating factors, like medications and treatment, are also taken into account in determining the limitation of an impairment. *Collado v.UPS,* 419 F.3d 1143, 1156-1157 (11th Cir. 2000). In fact, Defendants indicate, in Plaintiff's own testimony, medications alleviated her asthma and psychological treatment and medications caused her PTSD to go into remission. Except for a difficulty concentrating occasionally, Plaintiff indicated she did not have problems with work, or other daily activities. Thus, as in *Collado*, 419 F.3d at 1148, Plaintiff's own testimony indicated she did not have problems with her major life activities.

Plaintiff counters that:

> [d]iscriminatory practices include harassment on the basis of national origin, disability, or age; retaliation for opposing discriminatory practices; or employment decisions based on stereotypes or assumptions about the abilities, traits, or performance of individuals [.]

Silva's Response to Defendants' Motion for Summary Judgment Incorporated Memorandum of Law at 13, Silva v. Porter, No. 8:04-CV-2542 (M.D. Fla. March 11, 2006) (Document No. 88). However, Plaintiff does not answer Defendants' argument that the Rehabilitation Act does not apply because the Plaintiff lacks the requisite severe limitations on her life. Further, the Court, upon reviewing all depositions and documents filed in support of the Motion for Summary Judgment and Response thereto, has been unable to discern from the record any evidence showing Plaintiff is severely limited in her major life activities.

Plaintiff has not shown she is disabled, as required by the Rehabilitation Act. The Act requires the Plaintiff to show she is disabled, which has been defined under *Cash* and *Collado* as a severe limitation to one's major life activities that cannot be controlled by medications and/or treatment. Plaintiff has not shown, either in her memoranda or her deposition, that she has a severe limitation on *any* major life activity. Therefore, after reviewing all evidence and

memoranda related to the Motion for Summary Judgment, the Court does not find a reasonable juror could find Plaintiff established a prima facie violation of the Rehabilitation Act.

**b.       Title VII**

In response to the Civil Rights movement of the 1960's, Congress enacted numerous Civil Rights legislation, labeled Title VII.  Title VII makes it illegal to discriminate against an individual based on national origin, race, color, sex, or creed.  42 U.S.C. 2000e.  Congress placed the burden of showing discrimination on the claimant, and requiring the claimant to show

> [I.] respondent uses a particular employment practice [ii.] that causes a disparate impact on the basis of race, color, religion, sex, or national origin [iii.] and the respondent fails to demonstrate that the challenged practice is job related[.]

42 U.S.C. 2000e-2(k)(1)(A).  Further, Plaintiff must compare her situation to other employees, who were "similarly situated in *all relevant respects*." *Holifield v. Reno*, 115 F.3d 1555, 1556 (11th Cir. 1997) (emphasis added).  Finally, the Defendant must not be able to establish a legitimate, non-discriminatory reason for the Defendant's adverse action.  *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802 (1973).  The burden then shifts to the Plaintiff to show the Defendant's proffered reason is a pretext and excuse for discrimination.  Defendants argue that Silva has failed to show any disparate impact, and any disparate impact Silva suffered resulted from normal and accepted job related policies.

**1.       Failure to Promote**

An employer may differentiate employees' compensation, privileges, terms, and conditions based on a bona fide seniority system, provided there is not underlying discriminatory intent.  42 U.S.C. 2000e-2(h).

Defendants, USPS and Strandberg, argue that the Plaintiff, Silva, can only establish two instances where she was denied a promotion.  Defendants further identified two additional instances of job openings that would have constituted a promotion for the Plaintiff.  Defendants allege each job opening was denied to Plaintiff based on USPS' established seniority promoting system.  Further, Defendants argue that the Plaintiff failed to identify another employee in a similarly situated position.  As the Plaintiff failed to identify a similarly situated employee, Defendants could not treat such an employee more favorably than the Plaintiff.  Moreover, Defendants contend that the postal employees were promoted according to APWU-CBA union-

postal service agreement. *See* APWU-CBA Art. 37.2.D.3.c, 37.2.D.1, D.2, D.6. Plaintiff negotiated an EEO agreement where she was transferred from a part-time regular to part-time flexible employee. The APWU-CBA, in Art. 37.3.A.1 , states that a part time flexible employee does not transfer his or her seniority when he or she is reassigned to another facility. Therefore, the Defendants had a legitimate reason not to promote the Plaintiff.

Plaintiff argues that other employees, like postal worker Friedman, transferred from one post office to another without change to seniority. Further, Plaintiff claims USPS, through Ruth Johnson Williams, stated that Plaintiff would retain her seniority level. However, Plaintiff was transferred to the Englewood Postal Facility as a part-time flexible employee and without the seniority level she attained in Nokomis. Plaintiff also does not show Defendants' reason not to promote her was a pretext, other than to allege the Defendants engaged in intentional discrimination and attempted to cover up the discrimination.

Plaintiff has not identified an employee, treated more favorably, and in all relevant respects similar. The Plaintiff has identified other postal employees, but has not enunciated the similarities shared with those individuals. Plaintiff's position was changed from a part-time regular to a part-time flexible employee, pursuant to the Settlement. A part-time regular employee does not retain his or her seniority when he or she transfers to a new facility. The Plaintiff has not identified any other part-time flexible individual transferred from another postal facility, who did or did not retain his or her seniority, nor did she identify an employee with similar supervisor evaluations, customer reviews, or co-worker complaints. As such, Plaintiff has not shown discrimination in the promotional practices of the Defendants. Further, the Court finds the Defendants' established a legitimate and non-discriminatory reason for not promoting the Plaintiff. Plaintiff has not shown the Defendants' reason to be pretext, beyond alleging that the Defendants intended to discriminate against the Plaintiff.

**2.     Improper Discipline and FFD Exams**

Defendants again argue that Plaintiff cannot identify another employee in a similar situation. Further, Defendants argue that USPS and Strandberg had legitimate reasons for disciplining Plaintiff and scheduling FFD examinations, based on co-worker complaints filed against Plaintiff, supervisor evaluations and statements made to Defendants in regards to putting

a gun to her face. Moreover, Defendants produced a customer complaint to corroborate the view of Englewood management: that the Plaintiff was hostile toward others in the workplace.

Plaintiff argues the co-worker complaints are fabricated, because the USPS managerial staff at Englewood Post Office disliked Plaintiff. Additionally, because of the animosity of the managerial staff towards Plaintiff, the supervisor evaluations are skewed. Plaintiff also emphasizes her numerous commendations of excellent customer service, to argue that Defendants fabricated discipline and poor performance reviews. Finally, Plaintiff argues the statement about the gun was taken out of context. Plaintiff insists the full statement was "what am I supposed to do, shoot my face off so that I don't have my Hispanic outward appearance" and this statement could not be viewed at threatening to anyone, including the Plaintiff. Silva Depo. at 60. Therefore, Plaintiff contends her FFD exams were scheduled under pretext and discriminatory.

Plaintiff has not identified any individual or individuals who are materially and substantially similar to the Plaintiff and have not received discipline or a fitness for duty exam. Plaintiff identified a postal worker that pinned up a scantily clad cowboy picture. However, the supervisor spoke with the employee and the picture was removed. Jill Widner Decl., October 18, 2001 (Docket No. 84, Attachment 1, April 17, 2006). Further, this incident is not substantially similar to the alleged continuously abusive behavior Defendants allege Plaintiff exhibited towards fellow workers. Also, Defendants have a legitimate reason to schedule a FFD exam. As established under the USPS Management Instruction manual, a supervisor may schedule a FFD exam if an employee's work changes or deteriorates, or if a contract or USPS medical professional determines the need for such exam. (Docket No. 84, Attachment 1, April 17, 2006). Defendants have presented declarations from numerous supervisors stating the Plaintiff's work changed, and the supervisors were worried for Plaintiff's safety after her "shoot my face off" statement. Montoya Depo. 53: 11-25, 54:1-22 (Docket No. 96, May 15, 2006), Request for Fitness-for-Duty Examination (Docket No. 84, Attachment 2, April 17, 2006). Plaintiff claims Defendants' arguments are a pretext and complaints are massive conspiracy to harm her. However, Plaintiff have not provided proof to counter Defendants' proffered legitimate reason for scheduling Plaintiff a FFD exam. Therefore, the Court finds the Plaintiff has not established a prima facie case on this issue.

  **c.**  **Hostile Work Environment**

    To satisfy a § 1983 sexual and racial harassment claim, the

> [plaintiff] ha[s] to show that (1) she belong[s] to the protected groups at issue; (2) she was subjected to unwelcome sexual and racial harassment; (3) the harassment was based upon her gender and race; (4) the harassment affected the conditions of her employment; (5) the defendant ... acted under color of law; and (6) the defendant acted with a discriminatory purpose or intent.

*Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997).

    Defendants USPS and Strandberg argue that, based on *Miller v. Kenworth*, Silva must also show the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory and abusive working environment." Memorandum in Support of Defendant's Motion for Summary Judgment, filed April 17, 2006 (Document No. 84-1), citing *Miller*, 277 F.3d 1269, 1275 (11th Cir. 2002). Further, Defendants argue that only repeated verbal harassment, continuing after objections, are pervasive enough to constitute a hostile work environment. *Id.* The Defendants go on to allege that the Plaintiff can only establish three instances; a pornographic complaint of a "back-end" photographic shot of a naked "cowboy," a kissing incident between two coworkers, and a supervisor's comment that coworkers were intimidated by Silva's "Hispanic" appearance.

    Plaintiff, Silva, identified one coworker, Jeanne Staffeldt, who testified that Silva was treated considerably worse than other employees. Staffledt Declaration at 1-4, Staffledt Depo. at 20:11-15, 49:2-19 (Docket No. 96, May 15, 2006). She further stated the adverse treatment Silva received was based upon Silva's Hispanic, not Mexican, origins. Staffledt Depo. at 21:7-25, 22:1-17, 30:23-25, 31:1025, 40:14-25, 41:1-14, 57:8-24 (Docket No. 96, May 15, 2006). Additionally, the treatment Silva received began when Silva arrived and lasted throughout Silva's employment at the Englewood Post Office. . Staffledt Declaration at 4 (Docket No. 96, May 15, 2006).

    Plaintiff has established that there is prima facie evidence of a hostile work environment. It is uncontested that the Plaintiff is a Hispanic female. Plaintiff has documented that, and other witnesses noted, Plaintiff experienced incidents that were unwelcome, as she complained. Ms. Staffeldt testified that the Plaintiff endured hostile treatment by supervisors, ten times worse than what other employees experienced. Further, the treatment was due to Plaintiff's racial origins.

The Defendants claimed to act in their employer and supervisory positions respectively, under the color of law. The negative treatment began with Plaintiff's transfer to Englewood and lasted until her ultimate retirement from the USPS, presumably a continuous experience for the Plaintiff. Finally, Plaintiff argues Defendants had intent to discriminate against her. This is evidenced through the Plaintiff's supervisors singling her out for discipline, Staffeldt's testimony that no other employee was treated nearly as poorly, and the dispute between supervisory discipline letters and USPS letters of accommodation. Therefore, the Court finds sufficient evidence to preclude summary judgment on this issue.

**d.     Federal Tort Claims Act (FTCA)**

The FTCA states:

> claims against the United States, for money damages, ... for injury of loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. §1346(b)(1) (emphasis added). This includes the all independent establishments of the Federal Government, including corporations. 28 U.S.C. §2671. Further, the United States is liable for torts committed by Federal employees, to the same extent a private individual would be liable, in like circumstances. 28 U.S.C. 2674. However, punitive damages cannot be assessed against the United States. *Id.*

The Defendants, USPS and Strandberg, contend the FTCA is the sole remedy for state tort claims against the Federal government. Further, an FTCA claim may only be brought against the United States. The Defendants argue, they are not the United States and Plaintiff's claims of violations of the Florida Constitution, Florida Civil Rights Act violations, and state intentional infliction of emotional distress claims are not valid. Additionally, the Defendants argue the Plaintiff failed to show she complied with the prerequisite administrative procedures prior to filing her FTCA claim.

The Court does not agree with Defendants' reading of the statute, which creates liability against the United States, based on the laws of the state where the tort occurred. See 28 U.S.C. 1346(b)(1). The Defendants identified *Galvin v. Occupational Safety & Health Admin.*. 860 F.2d 685, 181 (5th Cir 1988). *Galvin* discusses 28 U.S.C. 2679, and specifically finds:

> that the United States, and not the responsible agency or employee, is the proper defendant in a Federal Tort Claims Act suit. ... [T]he FTCA vests the district courts with "exclusive jurisdiction of civil actions on claims *against the United States* for money damages ...The Act goes on to state that any other statute authorizing a federal agency to sue and be sued in its own name does not authorize an action against the agency ... under the tort claims provision.

*Id.* at 183.  Therefore, a FTCA claim must be dismissed for lack of jurisdiction.  *Id.*  However, other courts have found the statute includes all corporations and Federal Agencies, including the United States Post Office.  *See, Federal Exp. Corp. V. U.S. Postal Service*, 151 F.3d 536, 538-540 (6th Cir. 1998) (finding that the USPS can sue and be sued in its own name based on 39 U.S.C. §401).  The Court finds this to be the proper reading.  If this were not the case, Congress would not have specifically excluded lawsuits "arising out of the loss, miscarriage, or negligent transmission of letters or postal matters."  28 U.S.C. 2680(b).  This would indicate USPS may be liable for violations of Florida law.

However, the Defendants also argue Plaintiff was required to file an administrative claim before initiating a FTCA action.

> An action shall not be instituted upon a claim against the United States ... unless the claimant shall first have presented the claim to the appropriate Federal agency and his claim ... denied[.]"

28 U.S.C. 2675(a).   As such, Plaintiff was required to notify USPS, the administrative agency.  Upon denial, or USPS' failure to respond, Plaintiff would then have a ripe cause of action.  However, Defendants allege the Plaintiff did not notify USPS of her claims.  Plaintiff does not respond to this, thus the Court finds this contention undisputed.  As such, the Plaintiff has failed to allege a ripe claim under the Federal Tort Claims Act.


e.      **Health Insurance Portability and Accountability Act (HIPAA)**

USPS and Strandberg, Defendants, allege that the Health Insurance Portability and Accountability Act (HIPAA) does not apply to either Defendant, as HIPAA only applies to health care providers, health care clearinghouses, and health plans.  Furthermore, Defendants

claim HIPAA does not have a private cause of action, preventing the Plaintiff from suing for violations of HIPAA requirements.

Cases that have addressed HIPAA have found there is no private, federal cause of action. *See Bigelow v. Sherlock*, 2005 WL 283359 (E.D. La. 2005) (identifying cases that found no express or implied cause of action, *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F.Supp.2d 1176 (2001), *U. Of Colo. Hosp. Auth. V. Denver Publ. Co.*, 340 F.Supp.2d 1142 (2004)). Because HIPAA does not have a private cause of action, Plaintiff cannot establish a prima facie case for a HIPAA violation.

**f.      Privacy Act 5 U.S.C. §552**

"[T]o state a claim under the Privacy Act, a plaintiff must allege '1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages.'" *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1305 (11th Cir. 2004) (adopting the 9th Circuit elements for a Privacy Act cause of action). Moreover, the agency "acts intentionally or willfully 'either by committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the [Privacy] Act.'" *Mount v. U.S. Postal Service*, 79 F.3d 531, 533 (6th Cir. 1996) (quoting *Wilborn v. Dept. of Health and Human Servs.*, 49 F.3d 597, 602 (9th Cir. 1995).

Defendants argue USPS did not intentionally or wilfully fail to maintain the Plaintiff's records. In *Mount*, USPS successfully argued the defendants have a need to access the information. *Id.* at 534. Using *Hernandez v. Alexander*, the *Mount* court found no flagrant disregard for the plaintiff's rights. *Id.* (referring to *Hernandez*, 671 F.2d 402, 410 (10th Cir. 1982)(finding the need to know provision of the Privacy Act includes individuals making disciplinary decisions regarding Plaintiff). Similarly, Defendants claim the supervisors are permitted to view Plaintiff's file for routine use. Further, Plaintiff has no damages, as she was given medical leave.

Plaintiff did not address these issues or present a prima facie case of a violation of the Privacy Act. At best, she argues her rights were violated because a co-employee filed personal information and Plaintiff's medical and personnel files were on a supervisor's desk. However, the supervisor, Montoya, testified his office was locked when he was not working in the office.

Plaintiff did not show evidence of the existence of a prima facie case, but at most alleged some incidents that may point toward some elements of a Privacy Act violation. As such, Plaintiff has failed to meet her burden of showing the existence of essential elements of the claim.

 g. **Family Medical Leave Act (FMLA)**

The FMLA provides employees the right to leave for some familial or medically related events. 28 U.S.C. §6382 *et seq*. Title I of the FMLA controls employees with under twelve months of employment. Title II regulates the rights of employees employed for over twelve months. *See* 28 U.S.C. §§6381 *et seq*. However, Title II does not provide a private cause of action. *Sullivan-Obst v. Powell*, 300 F.Supp.2d 85, 99 (D.D.C.. 2004).

Both Plaintiff and Defendants agree the Plaintiff was employed with USPS for more than twelve months. As such, Plaintiff's claim is governed by Title II of FMLA, and does not have a private right of action. Further, the Plaintiff was not denied medical leave. Therefore, Plaintiff cannot establish a prima facie case.

 h. **Federal Labor Standards Act (FLSA)**

Defendants attest that 29 C.F.R. 785.18 does not require a lunch break, but merely suggests a break. The Court agrees with the Defendant's assessment, that the language of 29 C.F.R. 785.18 discusses a common business practice, providing short rest breaks to workers. It further states employers are to consider such breaks as time worked. 29 C.F.R. 785.18. The Plaintiff does not dispute Defendant's reading, nor does the Plaintiff allege any facts to establish a cause of action under the FLSA. As such, the Plaintiff has not satisfied the burden of providing a prima facie case under the FLSA.

 i. **OPM Regulations**

The Office of Personnel Management enacts rules that cover all competitive service positions. 5 C.F.R. § 1.1, 5 C.F.R. § 339.101. The competitive service is defined as "[a]ll civilian positions in the executive branch of the Government unless specifically excepted therefrom by or pursuant to statute or by the Office of Personnel Management[.]" 5 C.F.R. §1.2. When an agency orders an employee to undergo a medical examination, the agency must inform the employee in writing of its reasons for requiring the exam and the consequences of not cooperating. 5 C.F.R. §339.303.

Defendants argue the OPM regulations do not apply, as the USPS is excepted. However, the Defendants have not presented evidence, either a document or cite to a document, that confirms

this claim. Defendants cited to *Cooper v. U.S. Postal Service*, 2001 U.S. Dist LEXIS 19259 (N.D. Ill. 2001) (stating USPS is not included in the term "independent establishment") and *Cytryszewski v. MSPB*, 1995 U.S. App. LEXIS 36877 (Fed. Cir. 1995) (stating 39 U.S.C. §1005 does not provide same rights as an employee in the competitive service for preference eligibility). However, 39 U.S.C. §1005 states Title 5, chapter 75 shall apply, except as inconsistent with a bargaining agreement or USPS procedures approved of by Civil Service Commission. Furthermore, while the *Cytryszewski* court appears to indirectly insinuate that the USPS is not included in the competitive service, the Court does not find this evidence strong enough to show that the US Postal Service is not under the mandates of the OPM.. Therefore, the Defendants have not established there is no material fact and have failed to show that this claim should be dismissed.

**j.      5 U.S.C. § 2302**

Defendants argue that 5 U.S.C. § 2302 does not apply to the USPS. The court in *Booker v. Merit Sys. Protection Bd.*, reviewed 5 U.S.C. § 2302 and found it does not apply to the USPS because (a)(2)(C) defines agency as any "[e]xecutive agency and the Government Printing Office, but does not include (I) a Government corporation[.]" 982 F.2d 517, 519 (F.C. 1992). Further, the United States Post Office was dissolved in 1970 and the USPS was created as a government corporation. *Federal Express Corp. v. U.S. Postal Service*, 151 F.3d at 537 (discussing the creation of the USPS through Congress' enactment of 39 U.S.C. § 101).

The Plaintiff does not address this issue, or allege any facts to support her claim. Therefore, the Plaintiff has failed to establish a prima facie case of a violation of 5 U.S.C. § 2302.

**k.      Weingarten rights**

29 U.S.C. § 157 provides an employee the right to a union representative during an investigatory interview, when there is a risk of discipline. *Nat. Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 262 (1975). The National Labor Relations Board has authority to hear such cases. 29 U.S.C. 160. Moreover,"the NLRB has a statutory duty to enforce the

National Labor Relations Act and exclusive jurisdiction to decide unfair labor practices." *Taylor v. Nat. Labor Relations Board*, 786 F.2d 1516, 1520 (11th Cir. 1986).

Defendants argue the Plaintiff's Weingarten Rights claim was not properly initiated in Federal District Court, but rather should have been heard by the National Labor Relations Board. Additionally, Plaintiff was never denied access to the union steward. Montoya Decl. at ¶10 (Docket 84, Attachment 9, April 17, 2006); Strandberg Decl. at ¶10 (Docket 84, Attachment 8, April 17, 2006); Widner Decl. at ¶7 (Docket 84, Attachment 10, April 17, 2006). Finally, Defendants argue Plaintiff did not file her Complaint within the specified six-month period, as required by 29 U.S.C. 160(b).

Plaintiff did not challenge Defendants' arguments in her memorandum. Therefore, the Court finds the Plaintiff did not establish a prima facie case on this issue.

## 2. **Defendant's Claim Regarding Plaintiff's Failure to Timely Initiate Title VII Claim on Breach of EEO Settlement**

An aggrieved employee may bring civil suit within ninety days of receiving a notice of final action by an agency, department, or the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e-16(c).

Defendants argue Plaintiff was required to initiate her EEO claim within ninety days from receipt of the Equal Employment Opportunity Commission (EEOC) and failed to comply. Defendants claim the EEOC issued a final decision denying Plaintiff's claims on April 26, 2004. Silva 110-111. Further, the Plaintiff did not file her complaint with this court until November 22, 2004, well outside the permissible ninety-day period.

Plaintiff does not answer Defendants' claims. Failure to file a Title VII claim within ninety days is grounds for dismissal. *See Baldwin Co. Welcome Center v. Brown*, 466 U.S. 147 (1984) (failure to file complaint within 90 days of right to sue EEOC determination is bar to Title VII suit). *See also Barrett v. Rumsfeld*, 158 Fed.Appx. 89 (10th Cir. 2005) (following rule established under *Anjelino v. New York times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) (finding court should review a failure to file Title VII claim within ninety-day period under Fed. R. Civ. P. 12(b)(6)). Because Plaintiff did not answer Defendant's allegations, compounded with the fact that the Defendant's have shown Plaintiff filed her Title VII suit after the ninety-day period and that the Plaintiff has not presented anything to show either a prima facie case or a rebuttal to

Defendant's claims, Plaintiff has failed to show a she filed her Title VII suit within the prescribed ninety-day time period. Therefore, it is

**ORDERED** that the Defendant's Motion for Summary Judgment (Docket No. 83) be **DENIED** with respect to the hostile work environment claim and OPM Regulations and **GRANTED** with respect to the Rehabilitation Act, Title VII Failure to Promote, Title VII FFD exam, Federal Tort Claims Act, Health Insurance Portability and Accountability Act, Privacy Act, Family Medical Leave Act, Federal Labor Standards Act, 5 U.S.C. § 2302, and Weingarten Rights claims, and such claims are dismissed with prejudice from this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 10th day of July, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record